IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| JARED K. DAYLEY,<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES OF AMERICA; INTERMOUNTAIN HEALTH CARE, INC., d.b.a. INTERMOUNTAIN SPRINGVILLE CLINIC; DON L. BOWCUT, M.D.; and DOES I-X,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br>Case No. 2:16-cv-249-DB<br><br>Judge Dee Benson |

Before the Court is a motion for summary judgment brought by Defendants Intermountain Health Care, Inc. d.b.a. Intermountain Springville Clinic and Don L. Bowcut, M.D. (collectively "the IHC Defendants"). [Dkt. 68]. The motion has been fully briefed and a hearing was held before the Court on March 14, 2018. At the hearing, Plaintiff Jared K. Dayley was represented by Lena Daggs and Todd Walquist. The IHC Defendants were represented by James Burton. The United States of America was represented by John Mangum and Jeffrey Nelson. Based on the parties' written and oral arguments and on the relevant facts and the law, the Court enters the following Memorandum Decision and Order.

1

**BACKGROUND**

On December 22, 2005, Mr. Dayley visited the Intermountain Springville Clinic, a walk-in urgent care clinic, because he was experiencing fever, malaise, left flank pain and blood in his urine for two to three days. [Dkt. 69-1]. Defendant Dr. Bowcut examined Mr. Dayley and determined that he had dark tea-colored urine and possible glomerulonephritis. [Id.]. Dr. Bowcut ordered the following tests be performed on Mr. Dayley that day: a CBC (complete blood count), CMP (comprehensive metabolic panel), ASO (strep test), CRP-reactive protein tests), CT of abdomen and UA (urinalysis) with micro. [Id.]. Mr. Dayley left the clinic and returned the following day. He spoke to a nurse who reported to him that the test results they had received "were okay other than suspicious for mono and dehydration." [Id.]. Mr. Dayley told the nurse that he was still feeling ill. [Id.]. The nurse encouraged him to drink fluids and said they would contact him with the rest of the test results once they received them. [Id.]. She said he should expect to come in for follow up testing. [Id.].

Mr. Dayley's test results showed his creatinine level to be 1.6, above normal. [Dkt. 69-4]. An elevated creatinine level is a potential indicator of kidney problems. [Dkt. 69-5]. His glomerular filtration rate (GFR), which is used to detect kidney disease, was 54, below the normal level of 60. [Dkt. 69-4]. A low GFR over time can indicate chronic kidney disease. [Dkt. 69-5]. A CT scan of his abdomen was normal. [Dkt. 69-1].

On December 29, 2005, at Dr. Bowman's instruction, Nurse Linda Fuller telephoned Mr. Dayley to suggest he come back for repeat tests the following week. [Dkt. 69-1]. Mr. Dayley told her that he was feeling better. [Id.]. He said he did not have health insurance and asked if there

was "anything specific about coming back." [Id.]. On December 30, 2005, Nurse Fuller notified Mr. Dayley that according to Dr. Bowcut, if he was feeling better and the "urine is looking better" follow up "may not be essential." [Id.]. Otherwise, they needed "to make certain that his kidneys were not in danger." [Id.].

There is a disputed issue of fact as to what Mr. Dayley understood from Nurse Fuller about the need for him to follow up or receive further testing. [Dkt. 68, 88]. Mr. Dayley believed that his condition had improved and that if he no longer had blood in his urine, it was not necessary to obtain follow up lab work. [Dkt. 89-5]. Mr. Dayley did not follow-up with the Springville Clinic or a primary care physician. [Id.].

In July, 2011, Mr. Dayley visited a voluntary care clinic for treatment of a fractured jaw and chronic fatigue. [Dkt. 15 ¶48]. The attending physician ordered a blood test. [Dkt. 15 ¶49]. The test results revealed a creatinine level of 1.9, marked with an "H" indicating high. [Dkt. 15 ¶51]. The lab also revealed a GFR level of 41, marked with a "L" indicating low. [Dkt. 15 ¶53]. Mr. Dayley received a letter from the clinic requesting that he come back to discuss the test results and the potential need for therapy and urinary monitoring. [Dkt. 15 ¶56]. Mr. Dayley did so and was told he had hyperlipidemia and was advised to eat a low fat diet and exercise. [Dkt. 15 ¶60]. He alleges he was never informed of his high creatinine levels or problems with his kidneys and that receiving therapy and urinary monitoring were never discussed. [Dkt. 15 ¶62-65].

In 2014, Mr. Dayley visited Grandview Family Medical and was diagnosed with end stage kidney failure [88, 89-9]. His condition at that time suggested that he had suffered from

glomerulonephritis for at least nine years. [88, 89-6].

Mr. Dayley submitted a notice of intent to commence legal action on July 23, 2015. [Dkt. 68-13]. He filed his original complaint on March 29, 2016. [Dkt. 2]. The IHC Defendants seek dismissal from this action for two independent reasons. First, they contend that Mr. Dayley's claims are barred by the applicable statute of repose. Alternatively, they argue that their medical treatment of Mr. Dayley met the required standard of care. [Dkt. 68].

Mr. Dayley opposes the motion, asserting that this action is timely because the continuing course of treatment doctrine tolled the statute of repose. Alternatively, Mr. Dayley argues that the statute of repose is unconstitutional under both the United States and Utah constitutions. [Dkt. 88].

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing the motion." *Lozez v. LeMaster*, 172 P.3d 756, 759 (10th Cir. 1999).

## DISCUSSION

Utah Code §78B-3-404 sets forth the applicable statute of repose for medical malpractice actions in Utah:

> A malpractice action against a health care provider shall be commenced
> within two years after the plaintiff or patient discovers, or through the
> use of reasonable diligence should have discovered the injury, whichever
> first occurs, but not to exceed four years after the date of the alleged act,

4

omission, neglect, or occurrence.

It is undisputed that Mr. Dayley was treated at the Springville Clinic on December 22, 2005 and that he did not receive further treatment from Dr. Bowcut or the clinic after December, 2005. The last contact he had with the clinic was his telephone conversation with Nurse Fuller on December 30, 2005. Applying the four year deadline contained in the statute, the last date upon which Mr. Dayley could timely file his notice of intent to sue would be December 30, 2009. It is undisputed that he did not file his notice of intent to sue until July 23, 2015.

Mr. Dayley argues that notwithstanding these undisputed facts, his claims against the IHC Defendants are timely because the statute of repose was tolled by the continuing course of treatment doctrine.

## A. THE CONTINUING COURSE OF TREATMENT DOCTRINE

The statute of repose bars an action that is commenced more than four years after the date of the alleged act, omission, neglect, or occurrence. Utah Code §78B-3-404(1). Utah courts have recognized that where properly plead, the continuous course of treatment doctrine can toll the statute of limitations. *See Harper v. Evans*, 185 P.3d 573 (Utah App. 2008). Under this doctrine, where a patient is injured by a course of continuing negligent treatment by a health care provider, the cause of action does not accrue until the date of the final negligent act. *Id*. Mr. Dayley argues that continuing negligent treatment can be demonstrated by a defendant's continuing failure to report to the plaintiff the true nature of the defendant's findings and diagnosis. *Witt v. St. Vincent's Med. Ctr.*, 746 A.2d 753, 757 (Conn. 2000).

Here, Mr. Dayley argues that the IHC Defendants knew that his lab results were

5

significant and indicated abnormal kidney function and that it was possible that he had glomerulonephritis. Yet, they failed to provide him an accurate and complete picture of his kidney function at the time, which he relied on by not obtaining follow up medical treatment for years following his December, 2005 visit to the Springville clinic. Mr. Dayley contends that the IHC Defendants had an ongoing duty to correctly inform him of the significance of his lab results and that their alleged failure to do so constituted a continuing act of negligent care on their part which tolled the statute of repose until Mr. Dayley was diagnosed with kidney failure in 2014 and only then learned that his test results had indicated possible abnormality in 2005. Mr. Dayley asserts that there are at least disputed issues of material fact as to whether the IHC Defendants had a continuing duty that preclude summary judgment.

The IHC Defendants allege that the continuing course of treatment doctrine does not apply to this case because it is undisputed that Mr. Dayley did not seek treatment from Dr. Bowcut at anytime after December 2005. Where no ongoing physician-patient relationship exists, or when the defendant is not engaged in an ongoing course of treatment or monitoring that was explicitly anticipated by both parties even after the termination of such relationship, the continuing treatment doctrine does not apply. *Martinelli v. Fusi*, 963 A.2d 640, 652 (Conn. 2009); *Witt*, 746 A.2d at 757. "When a plaintiff does not seek further treatment from a particular defendant, that defendant has ceased to provide any such treatment, and there is no physician-patient relationship to protect." *Martinelli*, 963 A.2d at 652. "The policy underlying the continuous treatment doctrine seeks to maintain the physician/patient relationship in the belief that the most efficacious medical care will be obtained when the attending physician remains on

a case from onset to cure." *Rosata v. Maxcardo*, 844 A.2d 893, 898 (Conn. App. 2004). By contrast, "an urgent or stat care physician, who is treating a patient for an urgent problem, does not have an ongoing relationship with the patient and is not expected to see the patient again." *Nickler v. Mercy Medical Center*, 2003 WL 139791 at *6 (Ohio App. 2003).

The Court finds that the continuing course of treatment doctrine does not apply to the facts of this case. The Springville clinic is a walk-in facility. Mr. Dayley and Dr. Bowcut had no prior patient-doctor relationship. Nor did they have a relationship that continued past Mr. Dayley's December, 2005 visit. It is undisputed that Mr. Dayley received the results of his lab tests and had conversations about them with Nurse Fuller. Under these circumstances, the Court finds there was no continuing duty on the part of the IHC Defendants. Accordingly, the continuing course of treatment doctrine does not apply to toll the statute of repose. The undisputed facts establish that Mr. Dayley's action is barred by the statute of repose.

## B. CONSTITUTIONALITY OF THE STATUTE OF REPOSE

Alternatively, Mr. Dayley asserts that the statute of repose is unconstitutional. He argues that it does not allow a reasonable opportunity to discover one's injury, in violation of the open courts clause and uniform operation of laws clauses of the Utah Constitution and the equal protection clause of the United States Constitution.

### 1. The Open Courts Clause of the Utah Constitution

Article I, Section 11 of the Utah Constitution is known as the open courts clause. It states:

> All courts shall be open and every person, for an injury done to him in his
> person, property or reputation, shall have remedy by due course of law, which

> shall be administered without denial or unnecessary delay; and no person shall be barred from prosecuting or defending before any tribunal in this State, by himself or counsel, any civil cause to which he is a party.

Mr. Dayley argues that the four year statute of repose for medical malpractice suits violates this clause.

A statute of repose does not violate the open courts clause if it satisfies the three-part test the Utah Supreme Court outlined in *Berry v. Beechaircraft Corp*, 717 P.2d 670, 675 (Utah 1985). *Waite v. Utah Labor Comm'n*, 2017 UT 86. First, a court looks to "whether the legislature has abrogated a cause of action." *Waite*, 2017 UT 86 ¶19 (citing *Laney v. Fairview City*, 57 P.3d 1007 (Utah 2002)). If it has, the court then determines whether "the law provides an injured person an effective and reasonable alternative remedy." *Waite*, 2017 UT 86 at ¶19 (citing *Berry*, 717 P.2d at 680)). If there is no substitute or alternative remedy provided, abrogation of the remedy or cause of action may be justified only if there is a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means for achieving the objective." *Id*.

With regard to the third element, the Court has "an obligation of deference to legislative judgments in a *Berry* review." *Judd v. Drezga*, 103 P.3d 135 (Utah 2004). "[W]hen an issue is fairly debatable, we cannot say that the legislature overstepped its constitutional bounds when it determined that there was a crisis needing a remedy." *Id*.

The Utah legislature articulated its purposes for the Malpractice Act in Utah Code 78B-3-402, including the legislature's effort to reduce the increasing costs of medical malpractice insurance by reducing litigation against healthcare providers. Giving deference to the legislature

and its stated motives, the Court finds that it does not violate the open court's provision of the Utah Constitution.

2. <u>The Equal Protection Clause of the United States Constitution and the Uniform Operation of Law Provision of the Utah Constitution</u>

Mr. Dayley next argues that the statute of repose violates both the equal protection clause of the Fourteenth Amendment to the United States Constitution and the Utah Constitution's uniform operation of laws provision found in article I, section 24. The equal protection clause provides:

> All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

The uniform operation of laws provision as set forth in Article I, Section 24 of the Utah Constitution provides, "All laws of a general nature shall have uniform operation."

Like the equal protection clause, Utah's uniform operation of laws provision "guards against discrimination within the same class and helps ensure that statutes establishing or recognizing rights for certain classes do so reasonably given the statutory objectives." *Judd*, 103 P.3d 135; *Malan v. Lewis*, 693 P.2d 661, 670-71 (Utah 1984).

Mr. Dayley alleges that the statute of repose distinguishes between those who discover their claims in time to organize a legal action and those who do not. That distinction, he contends, does not further the expressed legislative goal of alleviating the alleged medical malpractice insurance crisis. Mr. Dayley argues that the statute of repose "essentially robs

individuals of their right to pursue a claim for an injury of which they were unaware, through no fault of their own." [Dkt. 88].

In order for a statute to avoid violating the uniform operation of laws provision, the court must find that it: "(1) is reasonable; (2) has more than a speculative tendency to further the legislative objective and, in fact, actually and substantially furthers a valid legislative purpose; and (3) is reasonably necessary to further a legitimate legislative goal." *Judd*, 103 P.3d at 141 (quoting *Lee v. Gaufin,* 867 P.2d 572, 581 (Utah 1993).

The IHC Defendants argue that the Utah Supreme Court has accepted the Utah Legislature's goals in the malpractice act to achieve the "legitimate legislative purpose of limiting health care costs and ensuring the continuing availability of health care resources." *Judd*, 103 P.3d at 142.

Giving "appropriate deference to the policy choices of the citizens' elected representatives," the Court finds that the statute of repose is a "reasonable method of implementing the legitimate legislative purpose of limiting health care costs and ensuring the continuing availability of health care resources." *Id.* Accordingly, the Court finds that the statute of repose in Utah Code § 78B-3-404 does not violate the uniform operation of laws provision of the Utah Constitution or the equal protection clause of the United States Constitution.

## CONCLUSION

Because the Court finds that Mr. Dayley's action is barred by the statute of repose, the IHC Defendants' motion for summary judgment is hereby GRANTED. The Court need not address the IHC Defendants' alternative argument that they met the required standard of care in

this case. Additionally, the Court need not consider the IHC Defendants' motions to exclude expert witness that are pending before the Court. [Dkt. 66 & 67]. Both of those motions are MOOT.

IT IS SO ORDERED.

DATED this 27th day of March, 2018.

_____
Dee Benson
United States District Judge